## SCHERER *v.* MORAN.

1. LANDLORD AND TENANT—TENANT FROM YEAR TO YEAR—HOLDING OVER RENEWS TENANCY.

   When a tenant under a lease for a year or years holds over, the law implies a contract on his part to renew the tenancy on the same terms for another year.

2. SAME.

   The fact that the tenant notified the landlord that he would be unable to vacate on the date the lease expired but would do so as soon as possible, did not relieve him from the legal effect of his holding over, where the landlord replied that unless the premises were vacated on the date the lease expired he should hold the tenant as renewing for another year under the terms of the lease.

As to whether each holding over by a tenant after expiration of a term for years constitute a new and separate term, distinct from that which preceded or followed, see note in 25 L. R. A. (N. S.) 847.

3. SAME—EVIDENCE OF LACK OF REPAIR INADMISSIBLE TO DEFEAT
   ACTION FOR RENT WHERE TENANT AGREES TO REPAIR.
   Testimony that the roof was out of repair was not ad-
   missible in defense of an action for the rent, where the
   lease provided that defendant should keep the premises
   in repair during the entire term of the lease, since de-
   fendant may not plead his own wrong.

4. SAME—RE-ENTRY AND RE-LETTING—CONTINUOUS TENANCY WHERE
   TENANT HOLDS OVER.
   Defendant may not evade liability on the legal fiction that
   there was a re-entry and a re-letting at the time de-
   fendant began the holding over; the tenancy being a con-
   tinuing one.

5. SAME—RELIEF FROM OBLIGATION TO REPAIR—CONSIDERATION.
   Evidence offered by defendant to show that by implication
   or by verbal understanding he was relieved of the ob-
   ligation to repair was properly refused, since said agree-
   ment was without consideration and unenforceable.

6. SAME—SUFFICIENCY OF EFFORTS TO RE-LET QUESTION FOR JURY.
   The question of the sufficiency of plaintiff's efforts to find
   another tenant was properly left to the jury.

Error to Wayne; Webster (Clyde I.), J. Submitted
January 11, 1922. (Docket No. 78.) Decided March
30, 1922.

Assumpsit by Hugo Scherer against Gilbert M.
Moran for a balance due on a lease. Judgment for
plaintiff. Defendant brings error. Affirmed.

*Charles E. Duffy* (*William G. Fitzpatrick*, of coun-
sel), for appellant.

*Behr & Coolidge,* for appellee.

CLARK, J. Plaintiff in writing leased to defendant
a dwelling for one year, October 14, 1916, to October
14, 1917, the rental being $720, payable $60 per month.
At the end of the term, the lease was extended for
one year by agreement of the parties indorsed on the

original lease.   On October 7, 1918, defendant wrote
plaintiff stating that a house he was building would
not be ready for occupancy on October 14th, the last
day of the term, and said:

"I have no occasion to renew my lease with you and
no intention of doing so, but would like the privilege
of remaining until such time as my house is ready."

Plaintiff replied:

"I would not care to rent this house during the
winter period, or, in fact, during any period by the
month.

"Your lease expires on October 14th, and I will ex-
pect you to vacate on that day or I will rent you the
house until May 15th, 1919, at the same rate of rental
you are now paying."

On October 14, 1918, defendant's attorney wrote
to plaintiff:

"Mr. Moran cannot possibly vacate the house to-
day, the 14th.   He will, however, do so as soon as
he can find a place for his household goods.   In the
meantime he will be glad and offers to pay any
reasonable charge for the use of the house until he
can vacate the same.

"It must be distinctly understood that he is not
holding over after the expiration of his lease willing-
ly; that he will not recognize any claim based upon
the theory of renewal for any period as a result of his
remaining in the premises after this date, and he
expressly declines to consider the proposition you
make to rent the place to him until May 15th next, at
any rate of rental whatever."

On the same day plaintiff replied, calling defend-
ant's attention to paragraph 13 of the lease, and say-
ing:

"It is perfectly well known to everyone having
charge of the rental of houses that the renting period
for the fall is now practically over and that no further
renting period occurs until the first of May, 1919.

Under these circumstances we must insist that you either give up possession of the house today, in accordance with the terms of the lease, or we consent to your holding over under all the terms of the lease, and especially under paragraph 13 thereof, and will look to you for the rent reserved in accordance with the terms of said lease."

Paragraph 13 of the lease:

"If the lessee shall, with the knowledge or consent of the lessor, continue to remain in the said premises after the expiration of the period for which they are hereby let, then in such case the lessee shall become a tenant from year to year."

And we quote the covenant as to repair:

"Party of the second part (defendant) agrees that he will during the said entire term of this lease keep and maintain the demised premises and all parts thereof in good and substantial repair and condition."

Defendant held over after the expiration of the lease, and until some time in November. When he left, plaintiff put a "For Rent" sign on the house and made other efforts to find a tenant, but was not successful until April 1st following. He sued to recover rent for the interval and had verdict and judgment. Defendant brings error.

The correspondence between the parties did not relieve the defendant of the legal effect of his holding over. When a tenant under a lease for a year or years holds over, the law implies a contract on his part to renew the tenancy on the same terms for another year (*Rice* v. *Atkinson, Deacon, Elliott Co.,* 215 Mich. 371; *Faraci* v. *Fassulo,* 212 Mich. 216), and we think the lease contemplates that result.

In his defense, defendant sought to show that the roof was out of repair at the time he quit. The offer of evidence to that effect was refused. Defendant by the lease acknowledged that the premises were in

good repair when taken and he paid rent for two years. Under the plain language of the covenant as to repair, the duty to repair was on defendant, and the refusal of such evidence was not error. 24 Cyc. p. 1086; 1 Tiffany, Landlord & Tenant, p. 753; 17 N. & C. C. A. p. 243. And such lack of repair, if any, would be defendant's wrong which he may not plead. Nor do we subscribe to the legal fiction that there was a re-entry and a re-letting at the time defendant began the holding over. Such tenancy was continuing. 25 L. R. A. (N. S.) 847. And the evidence offered by defendant to show that by implication or by verbal understanding he was relieved of the obligation to repair was likewise properly refused. For discussion of this question in similar cases, see *Brown v. Gray,* 199 Mich. 359, and *Rhoades v. Seidel,* 139 Mich. 608.

The question of the sufficiency of plaintiff's efforts to find another tenant was left to the jury. We cannot say that the verdict is against the great weight of the evidence. We find no reversible error.

Judgment affirmed.

FELLOWS, C. J., and WIEST, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.