WAGNER v REGENCY INN CORPORATION

Docket Nos. 116216, 116217. Submitted April 17, 1990, at Detroit. Decided November 5, 1990, at 9:25 A.M. Leave to appeal sought.

Gail Wagner was robbed and raped in the parking lot of the Regency Inn in Detroit while she was on the premises to rent a vehicle from Americar Rental Systems which maintained a rental office in the lobby of the Regency Inn. Thereafter, she brought an action for damages in the Wayne Circuit Court, based on the maintenance of a nuisance, against Regency Inn Corporation, Jetendra B. Patel, A.J. Patel, and Rashmi B. Desai, individually and doing business as Regency Inn Corporation, and Consolidex Corporation, doing business as Americar Rental Systems, alleging that the defendants had permitted criminal activity to take place on the premises, thereby creating a public nuisance which ultimately resulted in her injuries. Regency Inn brought a cross-claim for indemnity against Americar. Both Regency Inn and Americar moved for summary disposition of the plaintiff's nuisance claims. Regency Inn also moved for summary disposition of its indemnification claim against Americar. The trial court, Sharon Tevis Finch, J., denied summary disposition of the plaintiff's nuisance claims, holding that the plaintiff had stated a claim upon which relief could be granted and had pled adequate facts to support that claim, but granted Regency Inn summary disposition of its claim for indemnity, holding that Americar, as a holdover tenant, was bound by the indemnity provision contained in the lease entered into with a predecessor of Regency Inn. Americar appealed by leave granted, and Regency Inn cross appealed.

The Court of Appeals *held:*

1. An action for damages based on the maintaince of a public nuisance lies against a possessor of land who, by allowing known criminal activities to be committed upon its premises, permits the creation of an atmosphere of criminality which poses a significant risk to public safety and thereby leads to the

REFERENCES

Am Jur 2d, Nuisances §§ 33-37; Premises Liability §§ 45, 46, 48.
Parking facility proprietor's liability for criminal attack on patron. 49 ALR4th 1257.

commission of a criminal act against a member of the public. The plaintiff presented sufficient documentary evidence to raise a question of fact regarding whether the defendants created and maintained a nuisance per se and in fact upon their premises which led to her damages.

2. The trial court properly found that there was no question that Regency Inn was the indemnitee under the lease signed by Americar. The trial court also properly held that Americar, as a holdover tenant, was bound by the provision of the prior written lease. The lease provision, drafted by Americar, clearly provides for indemnity for acts which take place in or about those portions of the leased premises.

3. The trial court ruled only that the indemnity provision was valid and enforceable, but made no finding regarding the scope of Americar's liability. To the extent that the trial court's ruling may be construed to render Americar liable for indemnification of Regency Inn for acts of intentional wrongdoing, it is void and unenforceable. The language of the indemnity contract may be construed to render Americar liable to indemnify Regency Inn for liability arising out of its sole and concurrent negligence.

Affirmed.

DANHOF, C.J., concurring in part and dissenting in part, agreed with the majority on the question of indemnity, but would hold that the plaintiff failed to state adequately a claim upon which relief can be granted. He would reverse and grant summary disposition for the defendants.

1. NUISANCE — PUBLIC NUISANCE.

A public nuisance is an unreasonable interference with a right common to the general public; circumstances that may sustain a holding that an interference with a public right is unreasonable include whether it significantly interferes with public health, safety, peace, comfort, or convenience; whether it is proscribed by law, or whether it is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public rights.

2. NUISANCE — POSSESSORS OF LAND — ACTS OF THIRD PERSONS.

The possessor of land upon which a third person conducts an activity that causes a nuisance is subject to liability where the possessor knows or has reason to know that the activity is being conducted and that it causes or involves an unreasonable risk of nuisance and the possessor consents to the activity or fails to exercise reasonable care to prevent the nuisance.

3. NUISANCE — PREMISES LIABILITY — CRIMINAL ACTIVITIES.

  An action for nuisance was held to lie against the possessor of
  land who, by allowing known criminal activities to be commit-
  ted upon the premises, permitted the creation of an atmosphere
  of criminality which posed a significant risk to public safety;
  the person injured as the result of that criminal activity under
  those circumstances may recover damages for those injuries
  from the possessor of the land.

*Materna, Hires & Custer* (by *Michael T. Ma-
terna* and *Fred A. Custer*), for the plaintiff.

*John F. Sopt,* for Consolidex Corporation.

*Lizza & Mulcahy, P.C.* (by *David M. Lawson* and
*James H. Mulcahy*), for Regency Inn Corporation.

Before: DANHOF, C.J., and MURPHY and T. M.
BURNS,* JJ.

MURPHY, J. Defendant Consolidex Corporation,
doing business as Americar Rental Systems, ap-
peals by leave granted from the trial court's denial
of its motion for summary disposition under MCR
2.116(C)(8) and (C)(10), on plaintiff's claims for
nuisance per se and nuisance in fact. Americar
also appeals from the trial court's grant of sum-
mary disposition in favor of defendant Regency
Inn Corporation on its cross-claim against Ameri-
car for indemnification. Defendant Regency Inn
cross appeals from the trial court's denial of sum-
mary disposition on plaintiff's nuisance claims. We
affirm.

On October 25, 1985, plaintiff, a resident of the
Grand Rapids area, traveled to Grosse Pointe to
attend a garage sale. After deciding to purchase
some furniture, plaintiff telephoned defendant
Americar to arrange for a rental vehicle in order

---

* Former Court of Appeals judge, sitting on the Court of Appeals by
assignment.

to move the furniture. Plaintiff was advised that the Americar office closest to the garage sale was at the Regency Inn situated off the Interstate 94 expressway on the corner of Harper and Conner in the City of Detroit.

Plaintiff drove to the Regency Inn and entered the hotel building lobby where defendant Americar was located. While plaintiff was standing at the counter arranging to rent a truck, two men came out of the hotel bar and stood behind plaintiff harassing her in a suggestive manner. The men then left the building, and plaintiff completed her rental transaction.

Shortly thereafter, plaintiff went out to the hotel parking lot to retrieve her checkbook from her car. As she walked toward her car, plaintiff heard the door of a van slam open. She turned around to see one of the men from the hotel lobby standing at the door of the van holding a shotgun. The other man grabbed plaintiff from behind and pushed her into the van. After the men shut the van door, they robbed and raped plaintiff. They then drove the van out of the parking lot and dropped plaintiff, only partially clothed, out onto the expressway. A passer-by rescued plaintiff and took her to a hospital.

Defendant Americar, on appeal, and defendant Regency Inn, on cross appeal, contend that the trial court erroneously denied their motions for summary disposition under MCR 2.116(C)(8) and (C)(10). Defendants contend that plaintiff's nuisance claims cannot be maintained because her injuries were solely the direct and proximate result of intervening criminal acts of other parties. Defendants argue that plaintiff merely alleges a negligence claim under the guise of nuisance and conclude that they were entitled to judgment as a matter of law. Defendants' conclusion is based on

our Supreme Court's holding that a merchant has no duty, in the exercise of reasonable care, to protect its customers from the criminal acts of third parties merely because their business is located in a high-crime area. *Williams v Cunningham Drug Stores, Inc,* 429 Mich 495; 418 NW2d 381 (1988). See also *Harkins v Northwest Activity Center, Inc,* 434 Mich 895; 453 NW2d 677 (1990), and *Papadimas v Mykonos Lounge,* 176 Mich App 40; 439 NW2d 280 (1989), and cases cited therein. We disagree.

A motion for summary disposition under MCR 2.116(C)(8), for failure to state a claim on which relief can be granted, tests only the legal sufficiency of the claim as stated in the pleadings. The motion should be denied unless the claim is so clearly unenforceable as a matter of law that no factual development could possible justify recovery. *Mills v White Castle Systems, Inc,* 167 Mich App 202, 205; 421 NW2d 631 (1988).

As defendants correctly note, our Supreme Court has stated that the duty of reasonable care owed by owners and occupiers of land to their invitees does not extend to conditions from which an unreasonable risk cannot be anticipated or to dangers so obvious and apparent that the invitee may be expected to discover them himself. *Williams, supra,* 500. Accordingly, a merchant's duty of reasonable care does not include providing armed, visible security guards to deter criminal acts by third parties. *Id.,* 500-504. Moreover, a landowner has no duty to anticipate the hazards arising from a defective condition on its premises, such as a hole in a fence, that could facilitate criminal acts by third parties. *Harkins, supra.* Nevertheless, we do not read these holdings to bar claims of nuisance under facts such as those of the present case. We perceive a valid distinction be-

tween limiting a landowner's duty to protect his invitees from third-party crime and imposing liability on a landowner for creating or allowing continuing patterns of criminal activity on his premises which endanger his invitees.

*Williams* and its progeny focus on whether the relationship between a landowner-invitor and an invitee gives rise to a duty on the part of the invitor for the benefit of the invitee. By contrast, under a nuisance theory, liability is based on a dangerous, offensive, or hazardous condition of the land or on activities of similar characteristics which are conducted on the land. *Stevens v Drekich,* 178 Mich App 273, 277; 443 NW2d 401 (1989). A defendant held liable for the nuisance must have possession or control of the land. *Id.,* 278.

The essence of plaintiff's nuisance claims is that defendants, who owned or controlled the Regency Inn premises, intentionally or negligently created or allowed the existence of certain dangerous physical conditions and protracted criminal activities on their premises which combined to constitute a public nuisance. A public nuisance is an unreasonable interference with a right common to the general public. 4 Restatement Torts, 2d, § 821B, p 87; *Sanford v Detroit,* 143 Mich App 194, 199; 371 NW2d 904 (1985). The term "unreasonable interference" includes: (1) conduct that significantly interferes with public health, safety, peace, comfort, or convenience; (2) conduct that is prescribed by law; (3) conduct of a continuing nature that produces a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect on public rights. *Id.,* 199-200.

The possessor of land upon which the third person conducts an activity that causes a nuisance is subject to liability if: (1) he knows or has reason

to know that the activity is being conducted and that it causes or involves an unreasonable risk of causing the nuisance, and (2) he consents to the activity or fails to exercise reasonable care to prevent the nuisance. 4 Restatement Torts, 2d, § 838, p 157.

A nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circumstances. *Eyde Bros Development Co v Roscommon Co Bd of Rd Comm'rs,* 161 Mich App 654, 669; 411 NW2d 814 (1987).

By contrast, a nuisance in fact is a nuisance by reason of circumstances and surroundings. An act may be found to be a nuisance in fact when its natural tendency is to create danger and inflict injury on person or property. *Eyde, supra,* 669. A negligent nuisance in fact is one that is created by the landowner's negligent acts, that is, a violation of some duty owed to the plaintiff which results in a nuisance. *Buckeye Union Fire Ins Co v Michigan,* 383 Mich 630; 178 NW2d 476 (1970); *Young v Groenendal,* 10 Mich App 112; 159 NW2d 158 (1968). A nuisance in fact is intentional if the creator intends to bring about the conditions which are in fact found to be a nuisance. To establish intent, the plaintiff must show that, when the defendant created or continued the condition causing the nuisance, he knew or must have known that the injury was substantially certain to follow, in other words, deliberate conduct. *McCracken v Redford Twp,* 176 Mich App 365, 371; 439 NW2d 374 (1989); *Sanford, supra,* 199. We have reviewed counts I through III of plaintiff's complaint and conclude that when the factual allegations are accepted as true, along with any inferences which may be fairly drawn therefrom, plaintiff stated sufficient claims for nuisance per se

and nuisance in fact, both negligent and intentional. *Mills, supra,* 205.

Moreover, after reviewing the documentary evidence on the record, we conclude that the trial court also correctly denied defendants' motions for summary disposition under MCR 2.116(C)(10), because plaintiff had sufficiently raised genuine issues of material fact. Deposition testimony by an employee of defendant Americar and the affidavit of a security guard employed at defendant Regency Inn detailed the prevailing conditions on the premises at issue. Stolen cars, shootings, and calls to the police were almost daily occurrences. Prostitutes maintained rooms in the hotel on a daily basis. Drug trafficking was a constant problem with Young Boys, Inc., a notorious drug trafficking gang, renting entire floors of the hotel from which to run their operations. Breakings and enterings, assaults, armed robberies, and car thefts were frequent occurrences on the premises. A fire bombing once "took out" an entire floor of the hotel. Defendants and their agents and employees were aware of these occurrences.

Plaintiff also presented a report by an expert who opined that, on the basis of the frequent occurrence of crime on the premises and the physical condition of the premises, such as a privacy fence around the parking lot, the premises was a "crime magnet," that is, a place where crimes were even more likely to occur than in the surrounding high-crime area. The physical condition of the premises conveyed a message that "anything goes" and that there would be no proprietary intervention.

According to the terms of its lease, defendant Americar controlled office and lobby space in the hotel and portions of the parking lot. Americar was obligated to keep the premises in good repair.

Courts are liberal in finding a genuine issue of material fact. *St Paul Fire & Marine Ins Co v Quintana,* 165 Mich App 719, 722; 419 NW2d 60 (1988). Summary disposition is proper only when the court is satisfied that it is impossible for the claim asserted to be supported at trial. *Peterfish v Frantz,* 168 Mich App 43, 48-49; 424 NW2d 25 (1988). Giving the benefit of reasonable doubt and inference to plaintiff, it is reasonable to infer that defendants at least tolerated the conditions amounting to a nuisance and at worst condoned or created them. One need not stretch the imagination far to infer that defendants Regency Inn and Americar derived a substantial portion of their income from the illegal on-premises activities. One may infer that they knew or should have known that the physical condition of the premises and high degree of on-premises crime created an atmosphere of criminality which posed a significant risk to public safety and was substantially certain to result in types of activity such as that which caused plaintiff's injury. Contrary to defendants' contentions, evidence that they regularly called the police for assistance does not conclusively show that they took reasonable steps to abate the nuisance. It only creates a question of fact regarding defendants' intent and exercise of due care.

The existence of a nuisance per se is proved by evidence of the act which created it. *Eyde, supra,* 669. The existence of a nuisance in fact is a question for the trier of fact. *Id.* Whether a nuisance in fact is negligent or intentional is also a question of fact. We conclude that plaintiff presented sufficient documentary evidence to raise a question of fact concerning whether defendants created and maintained a nuisance per se and in fact on their premises and that the trial court

properly denied defendants' motions for summary disposition.

Defendant Americar also contends that the trial court erroneously made determinations of material fact when it granted summary disposition in favor of defendant, cross-plaintiff Regency Inn on the basis of an express indemnity provision contained in the parties' lease agreement. We disagree.

On August 9, 1984, defendant Patel, then operating under the name "Quality Inn of Detroit," entered into an agreement to lease space on the hotel premises to defendant Consolidex Corporation, doing business as defendant Americar. The lease, drafted by Americar, contained a provision by which Americar agreed to "indemnify and hold harmless Quality from any liability for damages to any person or property in, on or about said premises from any cause whatsoever." The lease also provided that a holdover by Americar after the expiration of the lease term would constitute a month-to-month tenancy in the absence of a written agreement to the contrary. The effective term of the lease was from August 1, 1984, through July 31, 1985.

When the term expired, defendant Americar did, in fact, continue as a holdover tenant. Therefore, at the time of plaintiff's injury, Americar was a month-to-month tenant.

Defendant Americar now contends that questions of fact existed concerning its liability under the agreement because the original lease agreement was with Quality Inn rather than Regency Inn, because the terms of the lease were no longer in effect during the month-to-month tenancy, and because the scope of the indemnity provision did not include occurrences in the parking lot. We agree with the trial court that these contentions are without merit.

First, the trial court correctly found that there was no question concerning the identity of the indemnitee. The same person, defendant Patel, signed the original lease, on behalf of Quality Inn, and a later lease, acting on behalf of defendant Regency Inn. Second, when a tenant under a valid lease for years holds over, the law implies a contract to renew the tenancy on the same terms for another year. *Kokalis v Whitehurst,* 334 Mich 477, 480; 54 NW2d 628 (1952); *Scherer v Moran,* 217 Mich 607; 187 NW2d 322 (1922). Therefore, the trial court correctly found that the provisions of the parties' lease continued during the holdover period.

Third, Americar agreed to indemnify the lessor, Regency Inn, for any liability for damages to any person in, on, or around the premises, from any cause whatsoever. Although indemnity contracts are strictly construed against the indemnitee, they are also construed against the drafter. *Pritts v J I Case Co,* 108 Mich App 22, 29; 310 NW2d 261 (1981). Defendant Americar drafted the lease and indemnity agreement. The plain and unambiguous language of this particular indemnity agreement is so broad it can only be construed as applicable to plaintiff's claim. *Calladine v Hyster Co,* 155 Mich App 175, 182; 399 NW2d 404 (1986). While plaintiff's injury, which occurred in the hotel parking lot, may not have occurred on the actual premises leased and controlled by Americar, it occurred in proximity to, in other words, "on or about," the leased premises. See *People v Fochtman,* 226 Mich 53, 62; 197 NW 166 (1924) (defining "about" in a temporal context).

Last, Americar argues that the trial court abused its discretion by refusing to rehear or reconsider its ruling that the indemnity clause was valid and enforceable because the grant of sum-

mary disposition on plaintiff's negligent claims leaves Americar to indemnify Regency Inn for its intentional acts. We need not address this contention at length because there has been no determination that plaintiff's injuries were solely the result of Regency Inn's intentional acts. Our review of the record shows that the trial court merely ruled that the indemnity provision was valid and enforceable, but made no findings concerning the scope of Americar's liability. To the extent that the trial court's ruling may be construed to render Americar liable for indemnification of intentional wrongdoing on the part of Regency Inn, we agree that it is void and unenforceable. See *Klann v Hess Cartage Co,* 50 Mich App 703; 214 NW2d 63 (1973). However, although the provision would be invalid if applied to indemnify Regency Inn for its intentional or wilful and wanton conduct, it may be validly applied to indemnify Regency Inn for liability for negligence. *Redfern v R E Dailey & Co,* 146 Mich App 8, 15-16; 379 NW2d 451 (1985); *Klann, supra,* 709. The plain, unambiguous, and all-inclusive language of the indemnity contract may be construed to render Americar liable to indemnify Regency Inn for liability arising out of its sole negligence and its concurrent negligence. *Chrysler Corp v Brencal Contractors, Inc,* 146 Mich App 766; 381 NW2d 814 (1985); *Gartside v Young Men's Christian Ass'n,* 87 Mich App 335, 339; 274 NW2d 58 (1978).

Affirmed.

T.M. BURNS, J., concurred.

DANHOF, C.J. *(concurring in part and dissenting in part).* While I agree with the majority's conclusion regarding indemnification by defendant Americar, I cannot agree with its conclusion that the

trial court properly denied defendant's motion for summary disposition regarding plaintiffs's nuisance claims. Because a nuisance may not be predicated upon an act or a failure to act, *Hobrla v Glass,* 143 Mich App 616, 630; 372 NW2d 630 (1985), plaintiff's nuisance claims are insufficient on their face. I would find that the nuisance claims are simply claims of negligence restated as another tort. And, a claim of negligence would fail, given our Supreme Court's ruling that defendants did not have the duty to protect plaintiff from criminal assaults by third parties. *Williams v Cunningham Drug Stores, Inc,* 429 Mich 495, 499; 418 NW2d 381 (1988). Moreover, criminal activity, by virtue of its deviant nature, is normally unforeseeable, and no higher standard of duty is applied to a business in a "high crime" area than to a business in other areas. *Papadimas v Mykonos Lounge,* 176 Mich App 40; 439 NW2d 280 (1989), lv den 433 Mich 907 (1989).

Regardless, plaintiff's nuisance claim cannot lie. It cannot be said that the natural tendency of defendants' conduct was to create danger and inflict injury upon a person or property. By plaintiff's own statement of facts, defendants neither permitted nor acquiesced in the illegal use of their premises by third persons. Accordingly, I would reverse the judgment of the trial court and grant defendants' summary disposition.